# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA FLORES,<br><br>Plaintiff,<br><br>v.<br><br>MISSOURI HIGHER EDUCATION LOAN AUTHORITY,<br><br>Defendant. | Case No. 1:25-cv-0940-JLT-EGC<br><br>**FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANT MOHELA'S MOTION TO DISMISS WITH PREJUDICE**<br><br>(Doc. 45)<br><br><u>FOURTEEN-DAY DEADLINE</u> |

## I. INTRODUCTION

On August 20, 2026, Defendant Missouri Higher Education Authority ("MOHELA") filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that Plaintiff Rebecca Flores' ("Plaintiff") Fourth Amended Complaint ("FAC"), (Doc. 44), failed to state a claim upon which relief can be granted. (Doc. 45 ("MTD")).

Plaintiff filed an opposition to the motion on September 3, 2026. (Doc. 47). Defendant filed a reply on September 14, 2026. (Doc. 51). The undersigned found the matter suitable for decision without oral argument pursuant to Local Rule 230(g) on September 9, 2026, and vacated the hearing. (Doc. 50).

For the reasons set forth below, the undersigned recommends that Defendant's motion to dismiss be granted without leave to amend.

## II. BACKGROUND

Given the extensive procedural history of this matter, including the filing of three prior

complaints and two motions to dismiss, the undersigned incorporates by reference the factual background set forth in its previous Findings and Recommendations, dated February 20, 2026, (Doc. 29), and June 5, 2026, (Doc. 41), and will not fully reiterate those facts herein.

## III. LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

A court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must a court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*,

550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## IV. DISCUSSION

Plaintiff asserts a sole cause of action pursuant to the Fair Credit Reporting Act ("FCRA") against Defendant pursuant to 15 U.S.C. section 1681s-2(b). Prior to addressing the merits of Plaintiff's claims, however, the undersigned must first address the threshold issue of Article III standing. According to MOHELA, pursuant to the United States Supreme Court's decision in *Spokeo, Inc. v. Robins*, 578 US. 330, 333 (2016), Plaintiff does not have standing to bring her claims. (Doc. 45 at 12–13). Thus, the undersigned first addresses Article III standing, and then the undersigned turns to address Plaintiff's FCRA claim.

### A. Article III Standing

MOHELA contends that, under the U.S. Supreme Court's decision in *Spokeo*, Plaintiff has failed to satisfy the injury-in-fact requirements of Article III of the U.S. Constitution. (Doc. 45 at 12–13). To establish Article III standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (internal quotation marks omitted). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 339. MOHELA asserts that Plaintiff has failed to allege an "injury in fact." (Doc. 45. at 13). The undersigned disagrees.

According to the Supreme Court, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo*, 578 at 338 (internal quotation marks omitted). Rather, "a 'concrete' injury must be 'de facto'; that is, it must actually exist," although it does not have to be "tangible." *Id.* (quoting Black's Law Dictionary 479 (9th ed. 2009)). Specifically, the Supreme Court noted that "[i]n determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* Further, the Supreme Court made clear "that the risk of

real harm [could] satisfy the requirement of concreteness," and that "the law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure." *Id.* at 341. "A plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.*

Turning to the FCRA specifically, the *Spokeo* Court explained that Congress "plainly sought to curb the dissemination of false information" in passing the FCRA. *Id.* at 342. However, the Supreme Court also recognized that "not all inaccuracies [under the FCRA] cause harm or present any material risk of harm." *Id.*

Here, Plaintiff alleges that MOHELA violated the FCRA by incorrectly reporting, verifying, and failing to correct Plaintiff's student loan history as it relates to credit reporting, and that as a result, Plaintiff's credit worthiness was harmed. (*See* FAC, ¶¶ 19–36). The undersigned finds that this is a sufficiently "concrete" injury-in-fact. *See Spokeo*, 136 S. Ct. at 340–42. Unlike the reporting of an incorrect zip code, which the *Spokeo* Court said could not confer Article III standing, Plaintiff here alleges that MOHELA has violated the FCRA not merely through a harmless data entry mistake, but by inaccurately publishing a contradictory and misleading narrative of severe historical delinquencies, collections, and account closures across Plaintiff's consumer credit reports. (FAC ¶¶ 19–36). Inaccurate reporting about whether a plaintiff has a debt and the precise status, severity, and timeline of any delinquency goes to the core of a consumer's financial reputation and introduces concrete, real-world harm to their credit prospects. *See Larson v. Trans Union, LLC*, 2016 WL 4367253, at *3 (N.D. Cal. Aug. 11, 2016) (finding that an allegedly inaccurate reporting of a consumer as a possible terrorist or criminal, in violation of the FCRA, was a sufficiently "concrete" injury because it caused the plaintiff emotional distress and could harm the plaintiff's employment and credit prospects); *Patel v. Trans Union LLC*, 2016 WL 6143191, at *3 (N.D. Cal. Oct. 21, 2016) (same). Importantly, the concrete nature of this reputational injury is not defeated or negated by the mere fact that a plaintiff may have been behind on their underlying payments.

Moreover, the harm is concrete and realized. Plaintiff alleges that the misleading data was actively disseminated to Equifax, causing Plaintiff's credit score to drop to a derogatory 505 and

directly resulting in a credit-limit denial by Capital One. (FAC ¶¶ 21–32). Dissemination of misleading credit information to third parties, coupled with tangible adverse credit consequences, bridges any gap between a bare procedural violation and a concrete, actionable injury. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 432 (2021) (holding that misleading credit reporting disseminated to third-party creditors inflicts a concrete reputational injury under Article III). Thus, assuming that the Defendant's reporting of the existence and delinquency of Plaintiff's debt was in fact inaccurate—a question that the undersigned discusses below in the context of the merits of Plaintiff's FCRA claim—the undersigned finds that Plaintiff has alleged a sufficiently "concrete" injury for purposes of Article III standing. *Spokeo*, 578 U.S. at 341–42. Accordingly, the undersigned turns to address whether Defendant's reporting of Plaintiff's debt was inaccurate under the FCRA.

**B. FCRA Analysis**

Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)). To ensure that credit reports are accurate, the FCRA imposes duties both on credit reporting agencies ("CRAs") and "on the sources that provide credit information to [consumer reporting agencies], called 'furnishers' in the statute." *Id.* In the instant case, MOHELA does not dispute that it qualifies as a furnisher under the FCRA.

The obligations of furnishers are described in 15 U.S.C. section 1681s-2(b). Under that section of the FCRA, furnishers have certain obligations that are triggered when they receive notice from a CRA that the consumer disputes the information. *Gorman,* 584 F.3d at 1154. Specifically, after receiving a notice of dispute, the furnisher shall:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information ...; and

> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1)...
>
> (i) modify that item of information;
>
> (ii) delete that item of information; or
>
> (iii) permanently block the reporting of that item of information.

15 U.S.C. section 1681s-2(b)(1).

To state a claim under section 1681s-2(b), a plaintiff must allege that: "(1) Defendant is a 'furnisher'; (2) Plaintiff notified the CRA that Plaintiff disputed the reporting as inaccurate; (3) the CRA notified the furnisher of the alleged inaccurate information of the dispute; (4) the reporting was in fact inaccurate; and (5) Defendant failed to conduct the investigation required by § 1681s-2(b)(1)." *Miller v. Westlake Servs. LLC*, 637 F. Supp. 3d 836, 848 (C.D. Cal. 2022) (citing *Gorman*, 584 F.3d at 1153). Importantly, "[t]hese duties arise only after the furnisher receives notice of dispute from a CRA; notice of a dispute received directly from the consumer does not trigger furnishers' duties under [§ 1681s-2(b)]." *Gorman*, 584 F.3d at 1154. Once a furnisher's section 1681s-2(b) duties are triggered, however, the FCRA creates "a private right of action for willful or negligent noncompliance" with those requirements. *Id.*

The existence of an actual inaccuracy is a threshold requirement; absent a plausible allegation of inaccuracy, a plaintiff's section 1681s-2(b) claim fails as a matter of law and the undersigned need not reach the reasonableness of the furnisher's investigation. *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251–54 (9th Cir. 2022); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010). Information in a credit report is "inaccurate" under the FCRA if it is either "patently incorrect" or "materially misleading." *Carvalho*, 629 F.3d at 890–91. Information is patently incorrect if it is "at the very least . . . inaccurate on its face." *Calvillo v. Experian Info. Sols., Inc.*, 2020 WL 1433521, at *9 (D. Nev. Mar. 23, 2020). Information is materially misleading when it is "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Gorman*, 584 F.3d at 1163. While a report need not be literally false to be actionable, imprecision or technical incompleteness alone does not establish an actionable inaccuracy. *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018).

1. Plaintiff Fails to State a Claim under Section 1681s-2(b)(1).

Here, MOHELA does not dispute that it qualifies as a furnisher under section 1681s-2(b)(1). Accordingly, the viability of Plaintiff's FCRA claim turns on two threshold issues: (1) whether Plaintiff plausibly alleges that a CRA notified MOHELA of the dispute, and (2) whether MOHELA's reporting was patently incorrect or materially misleading.[1]

a. *Notice and Reporting*

MOHELA argues that Plaintiff's claim fails because she does not allege that the specific credit-reporting inaccuracies raised in the FAC match the precise issues she initially disputed to the CRAs. The undersigned agrees. To state a plausible FCRA claim under section 1681s-2(b), a plaintiff must identify the precise reporting fields challenged and allege that those exact fields were submitted to a CRA for dispute. *See Harrold v. Experian Info. Sols., Inc.*, 2012 WL 4097708, at *4 (N.D. Cal. Sept. 17, 2012) (explaining that failing to allege with sufficient specificity when the relevant events occurred and the exact nature of the disputes subjects a complaint to dismissal). Although Plaintiff alleges in paragraphs 92 through 94 that her disputes targeted specific, concrete student-loan reporting fields, including payment history, pay status, actual payment amount, and delinquency history, the allegations remain conclusory. (Doc. 44 at 13). The undersigned previously cautioned Plaintiff that she must allege the specific inaccurate information Defendant provided to a CRA. (*See* Doc. 41 at 5–9). Despite this warning, Plaintiff again fails to allege facts identifying when or to which CRA any dispute was submitted, the substantive basis for each dispute, and whether the inaccuracies alleged in the FAC mirror the exact items disputed to the CRAs.

Instead, Plaintiff relies on boilerplate pleading templates that fail to satisfy the clear standards set forth in this Court's prior order. To adequately state a claim under section 1681s-2(b), a plaintiff cannot simply lump multiple entities together; rather, they must identify the specific CRA that reported the allegedly incomplete or inaccurate information. *See Anderson v.*

[1] MOHELA also contends that the Fourth Amended Complaint exceeds the limited leave to amend previously granted by introducing new factual theories based on discrepancies in mailed billing statements and post-default payment entries. (Doc. 45 at 12). Because the Court concludes that these allegations fail to state a plausible FCRA claim on the merits even if properly before the Court, the undersigned need not reach whether they exceeded the scope of the prior leave order.

*Experian Info. Sols., Inc.*, No. 16-CV-03328-BLF, 2017 WL 914394, at *7 (N.D. Cal. Mar. 8, 2017). Rather than pinpointing the exact entity responsible, Plaintiff uses a collective shotgun approach in paragraph 111 by vaguely alleging that "consumer reporting agencies, including TransUnion, Equifax, and Experian, notified the furnisher." (Doc. 44 at 15). *See Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (affirming dismissal where complaint grouped parties together without specifying "who did what").

Merely stating that the collective agencies forwarded "Plaintiff's disputes," (Doc. 44 at 15), alleging that MOHELA's statutory duties "were triggered when MOHELA received notice, (*id.* ¶ 112), and asserting that MOHELA "failed to satisfy those duties," (*id.* ¶ 114), to conduct a "reasonable investigation," (*id.* ¶ 113), are nothing more than a formulaic recitation of the elements. Likewise, by listing off every possible statutory action in a blanket list, claiming that MOHELA "responded, verified, updated, reinserted, continued, or supplied information after those disputes," (*id.* at¶ 111), without stating specific dates, matching files and tradelines, or confirming a factual nexus, these allegations only offer speculative legal conclusions. Without distinct, non-conclusory factual allegations demonstrating that Defendant received a specific CRA report, Plaintiff has failed to plausibly allege that Defendant's obligations under the FCRA were ever triggered, and her claim must be dismissed. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009).

Even though Plaintiff's failure to plausibly allege that Defendant's statutory duties were triggered is fatal to her claim and the undersigned's analysis could end here, the undersigned will nevertheless address why Plaintiff also fails to plead an actionable inaccuracy or materially misleading reporting under the FCRA.

b. *Inaccurate or Materially Misleading Information*

The Court previously considered Plaintiff's allegations concerning the accuracy of Defendant's credit reporting in connection with the motion to dismiss the Third Amended Complaint. (Doc. 41 at 7–8, *adopted by* Doc. 43). There, Plaintiff alleged that Defendant furnished inconsistent delinquency dates, payment statuses, and account histories. The Court concluded that those allegations did not plausibly establish an inaccuracy because Plaintiff failed

to explain why the challenged information was incorrect or materially misleading. In particular, the undersigned found that "simply pointing out inconsistent payment statuses, differing account numbers, or conflicting balances is not enough to state a claim within the meaning of the statute." (Doc. 41 at 8). The undersigned further explained that, although the reporting might appear internally inconsistent, Plaintiff had not alleged facts demonstrating that it was patently incorrect or materially misleading.

Plaintiff fails to cure these deficiencies in the Fourth Amended Complaint. Rather than alleging facts demonstrating that Defendant's reporting was patently incorrect or materially misleading under *Carvalho* and *Gorman*, Plaintiff merely repeats her prior strategy of highlighting apparent discrepancies across various credit reports and billing statements. Specifically, Plaintiff points to periods in 2024 and 2025 where her credit reports reflected an "OK" or current payment status followed by sudden delinquency reporting of 90 or 120 days past due, alongside shifting account balances, varying Dates of First Delinquency, and reported lump-sum payments in October 2025 coinciding with the transfer of her loans to the Department of Education.

At the pleading stage, a court accepts Plaintiff's well-pleaded factual allegations as true and draws reasonable inferences in her favor, without resolving disputed factual questions about industry reporting conventions in MOHELA's favor. Plaintiff alleges that MOHELA's own account statements and correspondence reflected past-due amounts during overlapping periods. For example, a March 5, 2024 statement reflected $2,110.47 past due and no payment since the prior statement; a September 5, 2024 statement reflected $2,200.95 past due and no payment since the prior statement; and a June 5, 2025 statement identified the account as "SEVERELY DELINQUENT," with $5,947.60 past due and no payment since the prior statement. (FAC ¶ 46, Ex. I). Plaintiff contends that these records contradict the credit reports' representation that the accounts were current and payments were being made as agreed.

MOHELA argues that the "OK" entries do not falsely indicate that Plaintiff's accounts were current, noting that federal student-loan servicers generally do not report delinquencies to CRAs until an account reaches 90 days past due. *See Grays v. Navient Sols.*, LLC, 2023 U.S. Dist. LEXIS 62166, at *6 (D. Colo. Feb. 8, 2023); *Bolich v. Nelnet Servicing*, LLC, 2023 U.S.

Dist. LEXIS 119926, at *20 (M.D. Fla. July 12, 2023). Even taking Plaintiff's allegations as true and without relying on extrinsic industry conventions, a payment-history entry marked "OK" followed by a later delinquency designation does not by itself establish that the earlier reporting was patently incorrect or materially misleading. Nor does the fact that a borrower owed a past-due amount under the terms of a loan automatically render the absence of a delinquency designation on a credit report actionable under the FCRA. *See Shaw*, 891 F.3d at 756 (explaining that mere imprecision or technical incompleteness does not establish an actionable inaccuracy); *Gorman*, 584 F.3d at 1163 (requiring that an omission or inaccuracy be "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions"). As the undersigned explained in its prior order, internal reporting inconsistencies do not state a claim without facts explaining why the challenged information was false or misleading. Crucially, Plaintiff does not allege that she was making timely monthly payments or that her loans were not in default. Because Plaintiff's own exhibits confirm her accounts were delinquent and subsequently assigned to the Department of Education's Default Resolution Group, reporting her accounts as delinquent or transferred due to default is neither inaccurate nor materially misleading under *Shaw* and *Carvalho*.

Finally, Plaintiff's remaining allegations regarding varying account balances, differing Dates of First Delinquency, and October 2025 payment entries fare no better under *Shaw* and *Carvalho*. Under Ninth Circuit precedent, pointing out that credit reports display varying balances, differing dates of first delinquency, or administrative account adjustments upon transfer does not establish an actionable inaccuracy unless those variations would be expected to adversely affect credit decisions beyond the impact of the true underlying default. *See Shaw*, 891 F.3d at 756; *Carvalho*, 629 F.3d at 890–91. Plaintiff fails to allege facts showing that administrative entries reflecting account closures and balance transfers to the Department of Education—even if formatted on a credit report as a zeroing-out payment upon transfer—would mislead prospective creditors or adversely affect credit decisions beyond the impact of her actual defaulted status. *See Gross*, 33 F.4th at 1251; *Gorman*, 584 F.3d at 1163. Because Plaintiff once again relies solely on internal reporting inconsistencies without establishing that any reported item falsely depicted her

underlying obligation, the undersigned finds that she fails to plead an actionable inaccuracy as a matter of law.

c. *Adequacy of Investigation*

Although that threshold failure is dispositive and the undersigned need not reach the adequacy of MOHELA's investigation, Plaintiff's claim independently fails because she also does not plausibly allege that MOHELA failed to conduct a reasonable investigation under section 1681s-2(b)(1).

Under section 1681s-2(b)(1), a furnisher's investigation upon receiving notice of a dispute from a CRA must be "reasonable" and non-cursory. *Gorman*, 584 F.3d at 1155, 1157. The reasonableness of the investigation is measured by the information the furnisher received from the CRA—specifically, whether the furnisher's procedures were reasonable considering the nature of the dispute described in the CRA's notice. *Id.* at 1157. An investigation is not necessarily unreasonable merely because it produces a conclusion unfavorable to the consumer, even if that conclusion ultimately proves inaccurate. *Id.* at 1161.

Here, Plaintiff alleges that a reasonable investigation should have included reviewing the relevant payment histories, account records, billing statements, and records concerning the transfer and closure of the loans, as well as correcting or deleting information that could not be verified. (Doc. 44 at 15–16). She contends that MOHELA failed to review relevant information and continued furnishing inaccurate information after the disputes. (*Id.*).

These allegations, however, do not sufficiently explain how MOHELA's investigations were unreasonable. The fact that a CRA reported information as verified or updated, or that disputed information later reappeared, does not itself establish that MOHELA conducted an inadequate investigation. Nor does Plaintiff's disagreement with the results of the investigations establish that MOHELA failed to investigate. *Gorman*, 584 F.3d at 1161.

More importantly, Plaintiff does not adequately connect the purported inaccuracies discussed above to the information communicated to MOHELA in the corresponding CRA notices or explain why the investigation undertaken in response to those notices was deficient. Although Plaintiff identifies several CRA disputes and alleges that MOHELA continued to furnish

challenged information, she does not allege facts showing that the relevant notices identified the specific payment-history or payment-amount inaccuracies that form the basis of her current theories, or otherwise provided information that would have alerted MOHELA to the alleged errors. The reasonableness of MOHELA's investigation must be assessed in light of the dispute actually communicated to it, not simply the broader allegations Plaintiff now advances in the complaint. *Gorman* at 1157.

Plaintiff's allegations concerning the records MOHELA should have reviewed do not cure this deficiency. They largely describe the investigation Plaintiff believes MOHELA should have performed, without alleging facts supporting a reasonable inference that MOHELA failed to undertake an adequate inquiry in response to the disputes it received. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (requiring factual content beyond threadbare recitals of a cause of action). Although the specific internal steps MOHELA took during its investigations may be developed through discovery, Plaintiff must first allege facts plausibly suggesting that the investigations were unreasonable. Because she has failed to do so, her claim must be dismissed.

Even assuming Plaintiff had plausibly alleged an actionable inaccuracy, the undersigned finds that the Fourth Amended Complaint does not plausibly allege that MOHELA failed to conduct a reasonable investigation in response to notice of any dispute.

d. *Willfulness and Negligence*

Finally, even if Plaintiff had plausibly alleged an underlying section 1681s-2(b) violation, her claim fails because she does not plausibly allege that MOHELA acted willfully or negligently. The FCRA does not impose strict liability; rather, a plaintiff must allege facts supporting a plausible inference of either willful noncompliance under section 1681n or negligent noncompliance under section 1681o. *See Gorman*, 584 F.3d at 1154.

To state a willful violation under section 1681n, a plaintiff must allege facts showing that the defendant knowingly or recklessly violated the statute, meaning its conduct ran an "unjustifiably high risk of harm that is either known or so obvious that it should be known." *Safeco*, 551 U.S. at 57, 68. Beyond threadbare assertions that MOHELA acted "willfully" or "recklessly," the Fourth Amended Complaint alleges no facts suggesting that MOHELA

knowingly falsified Plaintiff's credit data or adopted a reporting policy that was objectively unreasonable under established law. *See Iqbal*, 556 U.S. at 678. Likewise, to state a negligent violation under section 1681o, a plaintiff must plausibly allege both a failure to exercise reasonable care and actual damages proximately caused by the statutory violation. *See* section 1681o(a)(1); *Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1069 (9th Cir. 2008). Because Plaintiff has not plausibly alleged that MOHELA's investigation fell below an objective standard of reasonableness, or that her adverse credit consequences were proximately caused by an actionable inaccuracy rather than her undisputed underlying default, she fails to state a claim under either section 1681n or section 1681o.

**C. Leave to Amend Should be Denied**

Rule 15 provides that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, district courts are only required to grant leave to amend if a complaint can be saved. *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000). When a complaint cannot be cured by additional facts, leave to amend need not be provided. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995). Moreover, a district court's discretion to deny leave to amend is particularly broad where a plaintiff has previously amended the complaint. *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

Here, Plaintiff is proceeding on her Fourth Amended Complaint and has already been afforded multiple opportunities to state a viable FCRA claim. In dismissing the Third Amended Complaint, the Court expressly cautioned Plaintiff regarding the exact pleading deficiencies at issue, specifically, the need to allege non-conclusory facts identifying the specific CRA notices sent to MOHELA and explaining why the challenged reporting was patently incorrect or materially misleading rather than merely inconsistent. (Doc. 41; *adopted by* Doc. 43). Despite these clear instructions, Plaintiff has repeated the same conclusory allegations, while her own attached exhibits confirm that her student loans were delinquent and assigned to the Department of Education's Default Resolution Group. Because Plaintiff has repeatedly failed to cure these deficiencies despite prior notice from the Court, further leave to amend would be futile. *See Ismail v. Cnty. of Orange*, 693 F. App'x 507, 511–12 (9th Cir. 2017) ("A pro se complaint may be

dismissed with prejudice when 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015)). Accordingly, the undersigned recommends that Defendant's motion to dismiss be granted with prejudice and without further leave to amend.

## V. CONCLUSION AND RECOMMENDATIONS

Accordingly, based on the aforementioned findings, IT IS HEREBY RECOMMENDED that:

1. Defendant MOHELA's Motion to Dismiss Plaintiff's Fourth Amended Complaint, (Doc. 45), be GRANTED;
2. Plaintiff's Fourth Amended Complaint, (Doc. 44), be DISMISSED WITH PREJUDICE and without leave to amend; and
3. The Clerk of Court be DIRECTED to close this action.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. section 636(b)(1)(B) and this Court's Local Rule 304. **Within fourteen (14) days of service of these recommendations**, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. section 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 13, 2026**

Erin Sny Castillo
UNITED STATES MAGISTRATE JUDGE